[Cite as *State v. Hawkins*, 2026-Ohio-262.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115145 |
| v. | : | |
| FREDERICK HAWKINS, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 29, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-680401-A and CR-23-681245-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Matthew W. Moretto, Assistant Prosecuting
Attorney, *for appellee.*

Frederick Hawkins, *pro se.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Frederick Hawkins ("Hawkins"), pro se, appeals the denial of his successive petition for postconviction relief. He raises the following two assignments of error for review:

**Assignment of Error I:** [The] trial court abused its discretion when it failed to hold a hearing on [Hawkins's] motion to vacate and correct

sentence the record and circumstances supported claims that [Hawkins] was prevented from discovering the new evidence in violation of the Ohio Constitution Article 1, Section 16, Crim.R. 43(a)(1) and the Fifth and Fourteenth Amendments to the U.S. Constitution and [R.C.] 2929.19(A) and Crim.R. 32(a)(1), [R.C.] 2953.23(1)(1).

**Assignment of Error II:** [The] trial court abused its discretion by not granting a hearing. The issues raised could not have been determined without evidence outside of the record and that [Hawkins] put forth competent evidence in [his] own affidavit in support of [his] claim.

{¶ 2} For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 3} The facts of this case were previously set forth by this court in Hawkins's delayed direct appeal, *State v. Hawkins*, 2025-Ohio-459 (8th Dist.) ("*Hawkins II*"):[1]

> In April 2023, Hawkins was indicted in a three-count indictment. Counts 1 and 2 charged Hawkins with felonious assault in violation of R.C. 2903.11(A)(1) and (2), respectfully, second-degree felonies, and Count 3 charged him with domestic violence, a first-degree misdemeanor. *See State v. Hawkins*, Cuyahoga C.P. No. CR-23-680401-A ("April Case"). In May 2023, Hawkins was indicted in a two-count indictment, involving the same victim. Count 1 charged Hawkins with aggravated burglary, a first-degree felony, and Count 2 charged him with domestic violence, a first-degree misdemeanor. *See State v. Hawkins*, Cuyahoga C.P. No. CR-23-681245-A ("May Case"). Hawkins pleaded not guilty in both cases.
>
> In July 2023, change-of-plea and sentencing hearings were held in the April and May Cases. In the April Case, Hawkins pleaded guilty to attempted felonious assault, a third-degree felony, as amended in Count 1 of the indictment. Counts 2 and 3 were nolled. In the May Case, Hawkins pleaded guilty to burglary, a fourth-degree felony, as

---

[1] Hawkins initially filed an appeal in *State v. Hawkins*, No. 113427 (8th Dist. May 20, 2024) ("*Hawkins I*"), which was dismissed because Hawkins challenged the imposition of GPS monitoring and not the CCS violation hearing, thus rendering the appeal untimely.

amended in Count 1 of the indictment, and domestic violence, as charged in Count 2. Sentencing immediately followed.

During the sentencing hearing [in July 2023], the State advised that the victim requested that Hawkins be placed in inpatient treatment or outpatient treatment with an ankle monitor "so that the victim is safe to move on with her life while he is getting treatment." (07/18/23, tr. 19.) The trial court sentenced Hawkins to "two years of community control on each count on each case under the supervision of the adult probation department's mental health and development mental disabilities unit." *Id.* at 23. After the trial court advised Hawkins of the details of his sentence, the State inquired about GPS monitoring. The trial court advised:

> With my entry that I have in here, I am ordering an updated TASC assessment. I will order substance abuse treatment if it is warranted. I am ordering mental health release planning with the housing component and services. If [Hawkins] is released, I would consider [the case manager/reintegration planner] coming back and requesting the GPS. That would be an inclusion/exclusion zone for that time period. I'll include that in my entry. If [Hawkins] goes to inpatient treatment, then the order might be different.
>
> *Id.* at 26.

The trial court's subsequent sentencing entries imposed "two years of community control on each count, under the supervision of the adult probation department's mental health/developmental disabilities unit" and enumerated specific conditions of Hawkins's sentence. (Sentencing Entries, 07/18/23.) The sentencing entries further stated: "[Hawkins] to have GPS monitor [w]ith an inclusion/exclusion zone . . . with no contact with the victim of the offense if he is released. . . . If [Hawkins] is attending inpatient treatment, the court will review the GPS request[.]" *Id.*

*Id.* at ¶ 2-5.

{¶ 4} Then on October 25, 2023, the probation department reported that Hawkins's GPS monitor was removed and located in a park. Hawkins was nowhere to be found. As a result, the trial court issued a capias. Hawkins eventually turned

himself in weeks later. On November 13, 2023, the trial court held a probation-violation hearing. During the hearing, the trial court noted that putting Hawkins on supervision on two cases was a "leap of faith" and that Hawkins was gone for weeks knowing that the court gave him supervision on a higher-level felony case. (Tr. 35.) The trial court found Hawkins in violation and terminated his community-control sanctions. The court then sentenced Hawkins to 36 months in prison on Cuyahoga C.P. No. CR-23-680401-A and 18 months on Cuyahoga C.P. No. CR-23-681245-A, to run concurrently, for a total of 36 months.

{¶ 5} On appeal, Hawkins argued his sentence should be modified or vacated because the trial court failed to state the length of time GPS monitoring would be imposed at the July 2023 sentencing hearing in violation of Crim.R. 43(A)(1). We disagreed, finding that

> the trial court advised Hawkins at the sentencing hearing that it was imposing "two years of community control on each count on each case" and that GPS monitoring "would be an inclusion/exclusion zone for that time period." Thus, the trial court informed Hawkins of the length of time he would be subject to both community control and GPS monitoring in open court and on the record during the sentencing hearing. The July 18, 2023 sentencing entries mirror the sentencing hearing, imposing "two years of community control on each count" and ordering "[Hawkins] to have GPS monitor [w]ith an inclusion/exclusion zone . . . with no contact with the victim of the offense if he is released."

*Id.* at ¶ 10.[2]

---

[2] Following our decision in *Hawkins II*, Hawkins filed a motion for reconsideration, which was denied by this court because Hawkins failed to "call to the court's attention any obvious errors or raise issues that the court either failed to consider at all or did not fully consider when the original decision was made." (Journal entry, Apr. 11, 2025.)

**{¶ 6}** Meanwhile, before the time *Hawkins I* was dismissed and *Hawkins II* was filed in May 2024, Hawkins filed his first pro se petition for postconviction relief with the trial court on February 29, 2024, and a supplement on June 10, 2024.[3] In these filings, Hawkins alleged that the GPS sanction was void because "the court held a hearing violating the Ohio Constitution and Crim.R. 43(A), right to be present and due process of law. . . ." (Motion to vacate sentence, Feb. 29, 2024.) Then while *Hawkins II* was pending, Hawkins filed his second pro se petition for postconviction relief on November 25, 2024. In this motion, he contended that his "rights were violated by the court imposition of the GPS monitoring without notifying him that the GPS monitoring was a term and condition of the 2 years' community control sanctions imposed on July 18, 2023 at the sentencing hearing, nor was [Hawkins] informed of the length of time he would be subject to GPS monitoring in open court on the record in his presence." (Motion to vacate void/invalid sentence, Nov. 25, 2024.) The State opposed, arguing that Hawkins's petition is barred by the doctrine of res judicata. Alternatively, the State requested the matter be held in abeyance pending the outcome of *Hawkins II*. On January 27, 2025, the trial court denied Hawkins's February 2024 motion to vacate sentence and November 2024 motion to vacate void/invalid sentence.

---

[3] We note that Hawkins's motions are not titled as a petition for postconviction relief, but function as one and seek a similar result. Ohio courts have held that "Courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 2008-Ohio-545, ¶ 12, citing *State v. Bush*, 2002-Ohio-3993, citing *State v. Reynolds*, 79 Ohio St.3d 158 (1999).

**{¶ 7}** On February 27, 2025, Hawkins filed his third appeal, challenging the trial court's denial of his motions. This appeal was dismissed for the failure to file a timely appeal. *State v. Hawkins*, No. 114886 (8th Dist. Mar. 3, 2025). On March 11, 2025, Hawkins filed his fourth appeal, seeking leave to file a delayed appeal of the January 27, 2025 order. This appeal was also denied because delayed appeals do "not apply in civil proceedings." *State v. Hawkins*, No. 114906 (8th Dist. March 24, 2025).

**{¶ 8}** From March 14, 2025, to April 2, 2025, Hawkins continued to file various pro se motions in the trial court regarding his community control and GPS monitoring. Then on April 23, 2025, Hawkins filed his third petition for postconviction relief ("April 23 petition").[4] In this petition, Hawkins claimed that GPS monitoring was not ordered at the July 2023 sentencing hearing, but rather at an August 16, 2023 hearing, at which he was not present. (Motion to vacate and to correct sentence, Apr. 23, 2025). Hawkins further claimed that the August 16, 2023 journal entry demonstrates that a hearing took place, but no transcript of the hearing exists. The State opposed the April 23 petition, and included proposed findings of fact and conclusions of law. On May 7, 2025, the trial court denied Hawkins's April 23 petition and adopted the State's findings of fact and conclusions of law:

---

[4] According to the State, as of August 4, 2025, the April 23 petition no longer appears on the trial court's docket.

1.  The Court finds that the claims are substantially similar to those raised and decided by [*Hawkins II*].  The Court concludes that the Petition is barred by res judicata.

2.  The Court finds that [Hawkins] has already filed a Petition for Post-Conviction Relief on November 25, 2024, which was dismissed, and that the claims are substantially similar to those raised in [Hawkins]'s first Petition for Post-Conviction Relief.  The Court concludes that the Petition is a Second/Successive Petition.

3.  The Court finds that [Hawkins] has not presented any newly discovered evidence.  The Court concludes that no exception to the second/successive petition requirements of R.C. 2953.23 apply.

4.  Because the Court concludes that the Petition is a Second/Successive Petition and no exception under R.C. 2953.23 applies, the Court concludes it lacks jurisdiction to hear the claim.

(Journal entry, May 7, 2025).

{¶ 9}  On May 12, 2025, Hawkins filed his fourth pro se petition again challenging his sentence.  The trial court denied this petition as moot on May 19, 2025, because the petition was identical to the petition Hawkins previously filed and the court already denied on May 7, 2025.  Hawkins subsequently withdrew this petition in July 2025.

{¶ 10}  Hawkins has now filed his fifth appeal, this time challenging the trial court's denial of his April 23 petition.

## II.  Law and Analysis

{¶ 11}  In the first assignment of error, Hawkins argues that the trial court erred in denying the April 23 petition without a hearing.  Because Hawkins has filed previous petitions for postconviction relief, this petition is a successive petition.

{¶ 12} Appellate courts generally review the trial court's decision to deny a postconviction petition without a hearing for an abuse of discretion. *State v. Johnson*, 2015-Ohio-1649, ¶ 9 (8th Dist.), citing *State v. Boddie*, 2013-Ohio-3925, ¶ 11 (10th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The question of whether the trial court possessed subject-matter jurisdiction to entertain a successive petition for postconviction relief is a question of law, which appellate courts review de novo. *State v. Kenney*, 2025-Ohio-4841, ¶ 14 (8th Dist.), citing *State v. Scott*, 2024-Ohio-6211, ¶ 12 (8th Dist.), citing *State v. Apanovitch*, 2018-Ohio-4744, ¶ 24. "In a de novo review, we review the merits of the case independently, without any deference to the trial court." *State v. New Bey*, 2025-Ohio-4373, ¶ 7 (8th Dist.), citing *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 2021-Ohio-2592, ¶ 21 (8th Dist.).

{¶ 13} R.C. 2953.23 governs petitions for postconviction relief and provides that "a court may not entertain . . . successive petitions for similar relief on behalf of a petitioner unless [R.C. 2953.23(A)(1) or (2)] applies." R.C. 2953.23(A). Relevant to this appeal, the R.C. 2953.23(A)(1) exception allows the trial court to consider a successive petition if both of the following conditions are met:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in [R.C. 2953.21(A)(2)] or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A)(1). "'[A] petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of [a] . . . successive postconviction petition.'" *Kenney* at ¶ 17, quoting *Apanovitch* at ¶ 36.

{¶ 14} Here, Hawkins does not argue that the United States Supreme Court recognized a new federal or state right. Rather, he argues he was "unavoidably prevented" from discovering certain evidence. First, he contends that he was unavoidably prevented from discovering the details of the updated mental-health report and recommendations and the details of the updated substance-abuse report ("TASC assessment").[5] We note that Hawkins did not make these claims in his April 23 petition. While the April 23 petition refers, in passing, to the TASC assessment and mental-health reports, Hawkins never claimed that his petition was based on these reports and never claimed that he was unavoidably prevented from discovering the information in the reports. Because the trial court was not asked to determine this issue, we decline to review it for the first time on appeal. As the Ohio Supreme Court recently emphasized, "'[O]ur judicial system relies on the principle

---

[5] Hawkins also claims he was unavoidably prevented from discovering the details of the trial court's decision regarding releasing him for hip surgery and the details of the trial court's decision regarding the victim's request for treatment. Hawkins, however, does not specify what he means by "the details of the decisions" and fails to cite to the record in support of his claims. Therefore, we disregard this portion of his argument pursuant to App.R. 12(A)(2).

of party presentation, and courts should ordinarily decide cases based on issues raised by the parties.'" *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, quoting *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15, citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

{¶ 15} Hawkins next claims that he was unavoidably prevented from discovering statements in the State's appellate brief in *Hawkins II*, which noted that Hawkins was released for outpatient treatment.

{¶ 16} In his April 23 petition, Hawkins contended that the trial court imposed GPS monitoring at a hearing on August 16, 2023. In support of his contention, Hawkins argued that the State's statement that he was released for outpatient treatment is evidence that a hearing occurred on August 16, which he claims was when the terms of his release were ordered, including GPS monitoring and inpatient treatment.[6]

{¶ 17} The State's brief, however, does not indicate that a hearing was held on August 16, 2023. Rather, it acknowledges that the trial court issued a journal entry that date ordering GPS monitoring. Furthermore, the State's appellate brief in *Hawkins II* was filed on August 15, 2024, which was after Hawkins filed his first petition for postconviction relief in February 2024 but before the petition Hawkins

---

[6] We note the State acknowledges that its appellate brief in *Hawkins II* states "outpatient," and Hawkins asserts that he was not released for outpatient treatment, but instead was released for inpatient treatment. According to the State, "[i]f [Hawkins] is correct, then the State stands corrected. . . . However, what treatment he was released for is irrelevant to whether the trial court complied with Crim.R. 43." (State's appellate brief, p. 9, fn. 7.) We agree that the type of treatment is irrelevant for purposes of the trial court's compliance with Crim.R. 43.

filed in November 2024. Because the State's brief was on the docket and accessible, Hawkins could have raised any claims based on that brief in his November 2024 petition. Thus, he was not unavoidably prevented from discovering the statement.

{¶ 18} Lastly, Hawkins bases his April 23 petition on the contention that the trial court failed to comply with Crim.R. 43 by not stating the terms of GPS monitoring at the July 23 hearing, and for stating those terms at a hearing on August 16, 2023, when he was not present. Hawkins, however, has repeatedly raised this issue since *Hawkins II*. The record is clear that he has argued this same issue multiple times, including in all of his petitions for postconviction relief. And with each time, the only support he has offered is his interpretation of the transcript and the journal entries. Hawkins has not put forth any new evidence supporting his claim that a hearing took place on August 16, 2023, or that contradicts our conclusion in *Hawkins II* that the trial court advised Hawkins of his sentence in his presence and on the record in July 2023. *Hawkins II*, 2025-Ohio-459, at ¶ 10 (8th Dist.).

{¶ 19} Thus, based on the foregoing, we find that Hawkins fails to demonstrate he was unavoidably prevented from discovering any evidence. Because Hawkins fails to meet the requirements of R.C. 2953.23(A)(1)(a), the trial court did not have jurisdiction to entertain his successive petition as a matter of law and did not abuse its discretion by dismissing it without a hearing.

{¶ 20} The first assignment of error is overruled.

{¶ 21} In the second assignment of error, Hawkins argues that his April 23 petition is based on information outside of the record, and as a result, his claim could not have been reviewed on direct appeal. Essentially, Hawkins argues that res judicata did not bar the trial court from considering his successive petition for postconviction relief.

{¶ 22} "Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis in original.) *State v. Perry*, 10 Ohio St.2d 175, 180 (1967).

{¶ 23} This court has held that "[r]es judicata is a proper basis upon which to dismiss, without a hearing, an R.C. 2953.21 petition . . . if the trial court finds that the petitioner could have raised the issues in the petition at trial or on direct appeal without resorting to evidence beyond the scope of the record." *State v. Abdussatar*, 2009-Ohio-5232, ¶ 16 (8th Dist.), citing *State v. Scudder*, 131 Ohio App.3d 470, 475 (10th Dist. 1998).

{¶ 24} In this case, there is no doubt that Hawkins's direct appeal addressed whether Hawkins was present when the trial court imposed GPS monitoring. We stated:

> "A defendant has a fundamental right to be present at all critical stages of his or her criminal trial." *State v. Anderson*, 2024-Ohio-843, ¶ 25 (8th Dist.), citing U.S. Const., amend. V, VI, and XIV, Ohio Const. art

I, § 10, and Crim.R. 43(A). Crim.R. 43(A)(1) provides that "the defendant must be physically present at every stage of the criminal proceeding and trial, including . . . the imposition of sentence. . . ." Thus, a trial court cannot impose a sentence in a sentencing entry that differs from the sentence imposed at the sentencing hearing. *State v. Sandidge*, 2020-Ohio-1629, ¶ 6 (8th Dist.), citing *State v. Vaughn*, 2016-Ohio-3320, ¶ 18 (8th Dist.); *State v. Santiago*, 2015-Ohio-1824, ¶ 18 (8th Dist.), quoting *State v. Culver*, 2005-Ohio-1359, 160 Ohio App. 3d 172, 826 N.E.2d 367 (2d Dist.) ("A trial court errs when it issues a judgment entry imposing a sentence that differs from the sentence pronounced in the defendant's presence.").

Here, Hawkins argues that his sentence is contrary to Crim.R. 43(A)(1) because the July 18, 2023 sentencing entries imposed GPS monitoring despite the trial court's alleged failure to inform him of the length of time he would be subject to monitoring at the sentencing hearing.

. . .

Here, the trial court advised Hawkins at the sentencing hearing that it was imposing "two years of community control on each count on each case" and that GPS monitoring "would be an inclusion/exclusion zone for that time period." Thus, the trial court informed Hawkins of the length of time he would be subject to both community control and GPS monitoring in open court and on the record during the sentencing hearing. The July 18, 2023 sentencing entries mirror the sentencing hearing, imposing "two years of community control on each count" and ordering "[Hawkins] to have GPS monitor [w]ith an inclusion/exclusion zone . . . with no contact with the victim of the offense if he is released." Accordingly, we cannot say that Hawkins's sentence is contrary to Crim.R. 43(A)(1).

*Hawkins II*, 2025-Ohio-459, at ¶ 8-10 (8th Dist.).

{¶ 25} Because Hawkins raised the issue of a Crim.R. 43 sentencing violation in his direct appeal and has failed to demonstrate evidence outside of the record, we agree with the trial court that this issue is barred by res judicata. As this court has previously stated, "'If the claims brought in a second petition for post-conviction relief are ones that were or could have been brought in an earlier petition for post-

conviction relief, a trial court does not abuse its discretion in denying the second petition for post-conviction relief on the basis of res judicata.'" *State v. Murawski*, 1999 Ohio App. LEXIS 3723, *6 (8th Dist. Aug. 12, 1999), quoting *State v. Finfrock*, 1998 Ohio App. LEXIS 4889 *14 (2d Dist. Oct. 16, 1998); *see also State v. Cotton*, 1997 Ohio App. LEXIS 1882 (8th Dist. May 8, 1997) ("While Ohio law may permit the filing of multiple petitions, a petitioner does not have carte *blanche* to file successive petitions endlessly." (Emphasis in original.) *Id.* at *8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994)). The trial court did not abuse its discretion when it dismissed the successive petition without holding an evidentiary hearing.

{¶ 26} The second assignment of error is overruled.

{¶ 27} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR